Bonnie King filed a complaint for workmen's compensation benefits in the Circuit Court of Marshall County against Liberty Trousers, alleging that she was owed benefits for a work-related injury. Following oral proceedings, the court found King to be totally and permanently disabled. Liberty appeals.
The record reflects that King was employed by Liberty as a garment inspector. At the time of the injury she was 62 years old and had worked for Liberty for approximately 10 years. She has a tenth-grade education, with an I.Q. of 67, which is in the mildly mentally handicapped range. She has been married for 45 years. Much of her married life she spent farming with her husband. In 1979 she worked for a short time in a hospital kitchen. She began working for Liberty in May 1980.
On April 26, 1990, King was standing, doing her work, when a table behind her fell and hit her on the calves of her legs. She was knocked forward into the table in front of her, bruising her waist area.
Following the accident, King was taken to the emergency room, where she was examined and released. On May 2, 1990, she saw Dr. Ronnie Lewis, a general practitioner. Lewis noted a mildly swollen right leg with a hematoma. He released her to return to work on May 7, 1990. On May 7, 1990, King visited her family physician, Dr. Michael Belyeu. Belyeu examined her right calf and found an abscessed area which, he believed, should be drained. He referred her to a general surgeon.
Dr. Lynn Luther, the general surgeon, performed a procedure by which he drained the excess blood from King's right calf. Drainage tubes were placed in the area and were subsequently removed. He found that the injury had "pretty well stripped away all of the fat from between the skin and muscle as well as rupturing some blood vessels so that what was actually there was just liquified conglomerate of old blood and subcutaneous fat that had been torn away from the skin and the muscle." Luther followed King's recovery until August 1990. At that time King was still complaining of pain. Luther referred her to Dr. Jack Reagan, an orthopedist. Reagan saw King on one occasion. He recommended symptomatic treatment.
In March 1991 King visited Dr. Michael Lyons, an orthopedic surgeon. Lyons diagnosed her condition as peroneal nerve dystrophy. He imposed restrictions of no lifting over ten pounds and no sitting for more than four hours at a stretch and no standing or walking for more than an hour.
Jane Roberts, Liberty's vocational expert, testified that in her opinion King had sustained a 17%-20% vocational disability as a result of the accident.
Patsy Bramlett, King's vocational expert, testified that in her opinion King had a 100% vocational disability rating. She testified that her conclusion was based on King's I.Q. level, her low educational achievement, her age, and her physical complaints.
King testified that she has been in constant pain since the accident. She said that she could not stand, sit, or walk for extended periods of time without discomfort. She related that she has lost the ability to do her normal chores around her home. She stated that she was an avid vegetable and flower gardener but that she could no longer enjoy gardening. *Page 424 
The trial court made an extensive finding of fact. It determined that King was totally and permanently disabled. In making its determination, it found the following:
 "From the testimony and evidence herein, the court finds that the plaintiff is and has been, since said accident and injury, totally disabled and that she has been, since said accident, and will continue to be totally impaired in her ability to earn a living; that she will permanently suffer total disability and total impairment of her ability to earn and she is presently entitled to Workmen's Compensation benefits for total disability since April 29, 1990. The court further finds that the plaintiff reached maximum medical improvement in July 1990.
 "Although the plaintiff's injuries are primarily in her legs, the court finds that the incapacity is to the plaintiff's body as a whole. Gold Kist[, Inc.] v. Casey, 495 So.2d 1129 [Ala. Civ. App. 1986]. The court further finds that the plaintiff is unable to work at her job, held before the accident, and is incapable of being retrainable for gainful employment. Thompson v. Cole, 391 So.2d 1042 [Ala. Civ. App. 1980]."
Liberty asserts that the trial court erred in finding King to be totally and permanently disabled. It contends that recovery should have been limited to the scheduled allowance under §25-5-57(a)(3)a., Code 1975.
The test for total disability is the inability to perform one's trade and the inability to find gainful employment.Mead Paper Co. v. Brizendine, 575 So.2d 571 (Ala.Civ.App. 1990). Total disability does not mean entire physical disability or absolute helplessness. Genpak Corp. v. Gibson,534 So.2d 312 (Ala.Civ.App. 1988). It is the duty of the trial court to make some determination as to the extent of disability. Genpak. The trial court is not bound by expert testimony. Genpak. In making the determination, the court must consider all the evidence, including its own observations, and interpret it to its own best judgment. Genpak.
Concerning the exclusiveness of scheduled allowances, our supreme court stated the following in Bell v. Driskill,282 Ala. 640, 213 So.2d 806 (1968):
 "[A]lthough the injury itself is to only one part or member of the body, if the effect of such injury extends to other parts of the body, and produces a greater or more prolonged incapacity than that which naturally results from the specific injury, or the injury causes an abnormal and unusual incapacity with respect to the member, then the employee is not limited in his recovery under the Workmen's Compensation Law to the amount allowed under the schedule for injury to the one member."
We have found that an injury to a "scheduled member" extends to the body as a whole "where the effects of the specific injury consisted of pain, swelling, discoloration and an exacerbation of these symptoms whenever the member was used over time. . . ." Gold Kist, Inc. v. Casey, 495 So.2d 1129
(Ala.Civ.App. 1986); Republic Steel Corp. v. Kimbrell,370 So.2d 294 (Ala.Civ.App. 1979); Richardson Homes Corp. v.Shelton, 336 So.2d 1367 (Ala.Civ.App. 1976).
The court heard the experts and observed King; it is the trier of fact and has the duty to weigh the evidence. This court is precluded from doing so. Genpak. We merely examine the record to determine if the conclusion of the trial court is reasonably supported by the evidence, and if so, whether the correct legal conclusions have been drawn therefrom. Ex parteEastwood Foods, Inc., 575 So.2d 91 (Ala. 1991). We find such support in this case. The trial court's determination that King is totally and permanently disabled is affirmed.
Liberty argues that King should not be compensated for loss of ability to earn "into her seventies and eighties when she would not normally be earning income past the age of retirement."
Liberty cites no authority, persuasive or otherwise, to support its position. This court, therefore, refuses to entertain the issue. Harris v. Harris, 528 So.2d 866
(Ala.Civ.App. 1988). We observe, however, that permanent total disability does not terminate because of age. See §25-5-57(a)(4)a., Code 1975.
The judgment of the trial court is affirmed. *Page 425 
The foregoing opinion was prepared by Retired Appellate Judge L. CHARLES WRIGHT while serving on active duty status as a judge of this court under the provisions of § 12-18-10(e), Code 1975, and this opinion is hereby adopted as that of the court.
AFFIRMED.
All the Judges concur.